**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LOUIS M. LUPO,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-25-3993** |
| **GENERAL DYNAMICS INFORMATION TECHNOLOGY,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Louis Lupo ("Plaintiff"), proceeding pro se, brings this civil action against General Dynamics Information Technology ("GDIT" or "Defendant") alleging various claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Family and Medical Leave Act ("FMLA"), and state law. The matter is before the Court on Defendant's partial motion to dismiss. ECF No. 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Defendant's motion is granted.

## I. BACKGROUND

### A. Facts

Plaintiff worked in IT services for GDIT for over 20 years. ECF No. 14 (Am. Compl.) ¶¶ 1–10.[1] In 2007, Plaintiff became disabled from a severe spinal cord condition. *Id.* ¶ 18. Since 2010,

[1] The numbering of paragraphs in Plaintiff's Amended Complaint begins on page 1 but is restarted on page 4. *See* Am. Compl. at 1, 4. The citations to paragraphs numbers in this Memorandum Opinion refers to the paragraph numbering that begins on page 4 of the Amended Complaint.

Plaintiff's disability has been accommodated by grants of personal leave and telework agreements. *Id.* ¶¶ 21–23.

On or about September 19, 2023, Robert Dunbar, Plaintiff's project manager, informed Plaintiff that he could no longer use the "non-billable time off" code for when he took personal leave. *Id.* ¶ 26. Following this conversation with Dunbar, Plaintiff spoke with Heidi Penwell, an Employee Relations Partner Advisor, regarding his alleged "absenteeism." *Id.* ¶ 29. Plaintiff explained that he was requesting disability leave. *Id.*

On October 13, 2023, Plaintiff requested FMLA leave and a short-term return to part-time employment using his disability benefits once his FMLA expired. *Id.* ¶¶ 30, 32. According to Plaintiff, he was on FMLA for pay periods October 13, 2023, to October 20, 2023, and pay periods ending on November 3, 2023, and November 17, 2023. *Id.* ¶ 33. Plaintiff states that his eligibility for FMLA did not expire until on or about January 5, 2024. *Id.*

On October 25, 2023, Penwell called Plaintiff to discuss a meeting she scheduled regarding his "absenteeism." *Id.* ¶ 34. That same day, Plaintiff explained in an email to Penwell "that he had been onboarded as a person with a disability, the steps he had taken to comply with GDIT's changed requirements for him, and the name and phone number of a family member he requested, if appropriate, that she could contact." *Id.* ¶ 35. Penwell insisted she needed to speak with Plaintiff that day and told him "to reach out to the accommodations desk he had already contacted . . . ." *Id.* ¶ 36.

On November 3, 2023, Plaintiff spoke with Trina Bailey, a Workplace Accommodations Analyst, regarding his request for a short part-time return to work using his disability benefits following his FMLA leave and explained his difficulty in obtaining an MRI due to "the COVID back-up[.]" *Id.* ¶ 38. Plaintiff submitted medical documentation from his treating physician on

November 6, 2023. *Id.* ¶ 37. During this time, Plaintiff was receiving daily phone calls from Dunbar who left a voicemail explaining that management wanted him to call for a "status check." *Id.* ¶ 40.

On November 8, 2023, Dunbar sent an email to Plaintiff asking him to perform work-related tasks Dunbar believed were outstanding. *Id.* ¶ 41. In response that same day, Plaintiff asked for help with these tasks while he was on disability-related leave. *Id.* ¶ 42. Penwell and others were copied on this correspondence. *Id.*

On November 10, 2023, Dunbar stated in an email to Plaintiff that he believed Plaintiff had been absent since October 13, 2023, was not on approved leave, and had outstanding work that Plaintiff needed to complete. *Id.* ¶ 43. The same day, Plaintiff "responded to and also partially completed the outstanding work requested[.]" *Id.* ¶ 44.

On November 16, 2023, Dunbar again stated in another email to Plaintiff that he believed work remained outstanding and that Plaintiff was not on approved leave. *Id.* ¶ 45. Dunbar further advised Plaintiff that, under GDIT policy, Plaintiff was required to report to Dunbar daily. *Id.* Plaintiff responded that same day and referred Dunbar to his previous request for assistance. *Id.* ¶ 46.

GDIT terminated Plaintiff's employment the following day, November 17, 2023. *Id.* ¶ 46. The termination letter stated that Plaintiff "had voluntarily abandoned his position and had engaged in intentional mis-billing." *Id.* ¶ 49. On November 20, 2023, Plaintiff wrote to GDIT explaining that "he had not voluntarily abandoned his position, that he had not engaged in intentional mis-billing, that he was on FMLA, and that he had at least two (2) months of leave still available before his short-term disability policy became active." *Id.* ¶ 50. Plaintiff also requested a retraction of the termination letter, an apology, and an explanation for how both HR and operations could fail to

such an extent as to allow a long-term employee to be fired while on FMLA leave. *Id.* ¶ 52. On November 21, 2023, Plaintiff was notified by Jennifer Kray, Employees Relations Senior Management, that GDIT would not rescind the termination or correct its records. *Id.* ¶ 54.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 13, 2024. *See* ECF No. 16-2 (Def. Ex. A). In it, Plaintiff alleged:

> My employer discriminated against me on the basis on of my age, my disability, in retaliation of my existing disability settlement dated 2011, and in retaliation for my request for reasonable accommodations. My employer discriminated against me on the basis of my religious beliefs and permitted the harassment of me on the basis of my religious beliefs.

*Id.*

On September 15, 2024, Plaintiff filed an amended charge with the EEOC. ECF No. 16-3 (Def. Ex. B). In the amended charge, Plaintiff alleged that, in June and September 2023, he took unapproved leave without pay to attend a religious healing service. *Id.* Plaintiff further alleged that, on October 13, 2023, he submitted the required paperwork to the accommodation desk requesting two weeks of medical leave beginning in the last week of December. *Id.* Plaintiff alleged that he received no response to his accommodation request but received an email stating that he would be placed on leave without pay, and he was subsequently terminated for absence without leave. *Id.* Plaintiff claimed that GDIT discriminated against him based on his religion (Christianity), age (60), and disability, and retaliated against him for engaging in protected activity. *Id.*

**B. Procedural History**

Plaintiff filed his initial Complaint in this Court on December 5, 2025. ECF No. 1. Defendant filed a motion to dismiss. ECF No. 8. While that motion was pending, Plaintiff filed his Amended Complaint. ECF No. 14. Thereafter, Plaintiff also filed an opposition to Defendant's

first motion to dismiss. ECF No. 15. However, because Plaintiff timely filed an Amended Complaint, Defendant's original motion to dismiss is moot.

On March 12, 2025, Defendant filed a motion to partially dismiss Plaintiff's Amended Complaint. ECF No. 16. The Clerk's Office sent Plaintiff a notice regarding Defendant's motion and Plaintiff's right to file a response within 28 days. ECF No. 17. Plaintiff did not file a response. Nearly six months later, on September 3, 2026, Plaintiff filed a motion for leave to file a "Second Corrected and Amended Complaint." ECF No. 18.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure constitutes an assertion that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This rule is to give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is

very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

"[*P*]*ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). "[L]iberal construction does not require [the Court] to attempt to 'discern

the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

## III. DISCUSSION

GDIT moves to dismiss Counts III, IV, VII of Plaintiff's Amended Complaint. ECF No. 16-1 at 2. GDIT also seeks dismissal of any Title VII claims, to the extent Plaintiff intends to assert such claims. GDIT's motion will be granted for the reasons explained below.

### A. Count III

In Count III, labeled "Disability Discriminations – Impact," Plaintiff alleges that GDIT "limited, segregated, classified, and discriminated against" employees with a disability, such as Plaintiff, "by adopting and/or practicing employment policies and procedures that are facially neutral but fall more harshly on such individuals within this group, including but not limited to terminating such individuals and failing to provide reasonable accommodations." Am. Compl. ¶ 85. Plaintiff contends that these policies and procedures violate the ADA. *Id.* ¶ 87.

Defendant argues that Count III should be dismissed because Plaintiff did not allege that GDIT discriminated against anyone other than himself or facts to suggest that GDIT had a facially neutral policy that disparately impacted others. ECF No. 16-1 at 4. Plaintiff does not respond to this argument and therefore concedes the point. *See Fanucchi v. Enviva Inc.*, Civ. No. DKC 22-2844, 2024 WL 3302564, at *8 (D. Md. July 3, 2024) ("Plaintiff does not respond to [Defendant's] argument in his opposition and has therefore conceded the point.") (collecting citations).

In any event, Defendant is correct that Count III fails to state claim. The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination in this context is defined to include "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability[,]" *id.* § 12112(b)(3)(A), and "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard,"[2] *id.* § 12112(b)(6). As such, "disparate-impact claims are cognizable under the ADA." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (citing 42 U.S.C. § 12112(b)). Such claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* at 52 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–336, n.15 (1977)). Here, Plaintiff's Amended Complaint does not identify any facially neutral standards that result in a disparate impact on employees with disabilities; nor does he allege that anyone other than himself suffered the purported disparate impact. *See Steward v. Gwaltney of Smithfield, Ltd.*, 954 F. Supp. 1118, 1126 (E.D. Va. 1996), *aff'd*, 103 F.3d 120 (4th Cir. 1996) (dismissing a disparate-impact claim where Plaintiff failed to identify any facially neutral standards which resulted in discriminatory hiring practices and did not claim that anyone else suffered disparate impact except for him). Plaintiff's "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. Therefore, the ADA disparate-impact claim in Count III must be dismissed.

[2] Such standards, test, and criteria do not constitute unlawful discrimination if, "as used by the covered entity," they are "shown to be job-related for the position in question and . . . consistent with business necessity[.]" 42 U.S.C. § 12112(b)(6).

**B. Count IV**

In Count IV, Plaintiff alleges that GDIT "violated § 501 of the Rehabilitation Act by discriminating against Plaintiff based on his disability," and "by failing to take affirmative steps to retain Plaintiff." Am. Compl. ¶ 91. Defendant argues that Count IV must be dismissed because it is not a federal employer and Plaintiff was not a federal employee. ECF No. 16-1 at 5. "The Rehabilitation Act bars federal agencies from discriminating against employees with disabilities." *Desmond v. Mukasey*, 530 F.3d 944, 952 (D.C. Cir. 2008) (citing 29 U.S.C. § 791(b)). Section 501 "provides a private right of action to disability discrimination victims who are employees of the federal government." *Hill-Keyes v. Colvin*, Civ. No. 13-2852, 2016 WL 7654653, at *3 (E.D. Pa. Mar. 11, 2016), *aff'd sub nom. Hill-Keyes v. Comm'r of U.S. Soc. Sec. Admin.*, 658 F. App'x 86 (3d Cir. 2016). But § 501 "applies only to federal employers[.]" *Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997); *see also Lopez v. Johnson*, 333 F.3d 959, 961–64 (9th Cir. 2003) (affirming summary judgment on Rehabilitation Act § 501 claim in favor of the Acting Secretary of the Navy where plaintiff failed to show he was a federal employee). As alleged in the Amended Complaint, GDIT is a private employer, *see* Am. Compl. at 3–4, and Plaintiff does not allege any facts to suggest that he was a federal employee. Plaintiff does not dispute GDIT's argument that it is not subject to § 501 of the Rehabilitation Act. Accordingly, Count IV must be dismissed for failure to state a plausible claim under Rehabilitation Act § 501.

**C. Count VII**

In Count VII, Plaintiff asserts a claim for "intentional failure to supervise." Am. Compl. at 17. Specifically, Plaintiff contends that GDIT violated its "duty to supervise" and that its conduct was "so outrageous in character and was so extreme in degree that a reasonable member of the community would regard such conduct as atrocious, going beyond all possible bounds of decency and as being utterly intolerable in a civilized community." Am. Compl. ¶¶ 106–07. Defendant

argues that this claim should be dismissed because "Plaintiff does not identify any authority recognizing such a tort under Maryland law, nor does such a claim exist under Maryland law." ECF No. 16-1 at 5. This Court is not aware of any legally cognizable claim that a private employee may assert against a private employer for "intentional failure to supervise," and Defendant is correct that Plaintiff cites no legal authority for any such claim. *See Marinkovic v. Vasquez*, Civ. No. GLR-14-3069, 2015 WL 3767165, at *10 (D. Md. June 16, 2015) ("Count V alleges deliberate failure to supervise as an independent action. [Plaintiff] does not point to, nor is the Court aware of, any authority recognizing an independent state law tort action for deliberate failure to supervise under Maryland law.").

To the extent that Plaintiff intends to assert a claim for relief based on a constitutional violation under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), GDIT, again, is a private entity, and Plaintiff does not allege facts sufficient to suggest that it ever acted under color of law. *See Williams v. United States*, Civ. No. DKC-21-537, 2021 WL 1720230, at *2 (D. Md. Apr. 30, 2021) ("To state a *Bivens* claim, a plaintiff must allege that 'a federal agent acting under color of his [federal] authority' violated his constitutional rights.") (quoting *Bivens*, 403 U.S. at 389); *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) ("To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'") (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

For each of the foregoing reasons, Count VII of Plaintiff's Amended Complaint must be dismissed for failure to state a claim on which relief can be granted.

**D. Title VII**

On the first page of his Amended Complaint, Plaintiff states that he seeks relief under, among other statutes, Title VII of the Civil Rights Act. *See* Am. Compl. at 1. But none of the Amended Complaint's numbered counts identifies Title VII as the source of law support any of Plaintiff's claims. Instead, Plaintiff expressly identifies the ADA, Rehabilitation Act, FMLA, or state law as the basis for each claim. Accordingly, GDIT argues, to the extent Plaintiff intended to assert a Title VII claim, that claim should be dismissed. *See* ECF No. 16-1 at 5–6.

Although courts must construe pro se pleadings liberally, liberal construction does not permit a court to rewrite a complaint or read claims into a complaint that the plaintiff has not actually pleaded. *See Hairston v. DVA, Reg'l VA Off. Martinsburg*, 841 F. App'x 565, 568–69 (4th Cir. 2021) (explaining that courts must look to the substance of a pro se pleading rather than its labels but may not construct claims that the plaintiff has not presented).

Here, Plaintiff's reference to Title VII on the first page of his Amended Complaint is insufficient, standing alone, to state a claim under that statute. Plaintiff does not identify Title VII as the basis for any of his numbered counts, nor is it clear which factual allegations might be intended to support a Title VII claim. The Amended Complaint therefore does not provide GDIT fair notice of a Title VII claim or the factual basis for such a claim. Accordingly, the Court finds that the Amended Complaint fails to state a claim under Title VII.

**E. Plaintiff's Motion for Leave to Amend**

Recently—several months after his deadline to respond to Defendant's motion to dismiss passed—Plaintiff filed a motion requesting leave to amend his pleading. ECF No. 18. The Court notes that Plaintiff already amended his Complaint once, as a matter of course under Federal Rule of Civil Procedure 15(a)(1), after Defendant filed its first motion to dismiss. Now that Defendant

has moved to dismiss the Amended Complaint in part, Plaintiff seeks another shot at curing pleading defects Defendant has identified. *See* ECF No. 18 at 2.[3]

In these circumstances, the Court finds that it may prove inefficient and ultimately prejudice Defendant to require it to respond to Plaintiff's motion for leave to amend without some assurance that Plaintiff will not seek to amend his pleading again after this Court's present ruling on the motion for partial dismissal. Plaintiff will have an opportunity to review the instant Memorandum Opinion and shall notify the Court and Defendant whether, in light of this Court's ruling, he will withdraw or modify his motion for leave to amend or pursue it as presently filed. Defendant will not be required to respond to Plaintiff's motion for leave to amend until after Plaintiff files this notice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for partial dismissal is granted, and Counts III, IV, and VII of the Amended Complaint, as well as any Title VII claims, are dismissed without prejudice. Plaintiff's motion for leave to amend is held in abeyance. After reviewing this Memorandum Opinion, Plaintiff shall file a notice with the Court stating whether he intends to pursue his motion for leave to amend as presently filed, withdraw the motion, or revise the motion. The required notice, and any revised motion, shall be filed within 21 days. A separate Order will issue.

September 11, 2026
Date

/S/
Matthew J. Maddox
United States District Judge

[3] Plaintiff explains in his motion that he was not aware of Defendant's motion for partial dismissal of the Amended Complaint until September 1, 2026, and promptly moved for leave to amend.